UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**HENRY L. WATSON, III,**

                **Petitioner,**

     **v.**                                    Case No. 24-CV-400

**BRADLEY MLODZIK[1],**

                **Respondent.**

---

## DECISION AND ORDER

---

Henry L. Watson, III shot two men in the parking lot of a Milwaukee auto parts store. Watson shot Tyrese Barnes twice, and Barnes survived. *State v. Watson*, 2023 WI App 62, ¶ 2, 409 Wis. 2d 766, 998 N.W.2d 851, 2023 Wisc. App. LEXIS 1042. Watson shot Javon Lattimore four times, and Lattimore died as a result. *Id*.

The incident began with a confrontation between Watson and Barnes. Fearing that Barnes had a gun, Watson took out his own gun and began firing. The jury accepted Watson's claim of self-defense and acquitted him of the charges related to shooting Barnes. But as to Lattimore, who was working under a car at the time and not

---

[1] Bradley Mlodzik, the current warden of the institution where the petitioner is incarcerated, is substituted as the respondent.

involved in the confrontation between Watson and Barnes, the jury found Watson guilty of homicide by negligent handling of a dangerous weapon. (ECF No. 13-1 at 2.)

After unsuccessfully challenging his conviction in state court, Watson filed a petition for a writ of habeas corpus. (ECF No. 1.) He subsequently withdrew all but two of his claims. (ECF Nos. 21, 22.) The two remaining both relate to the jury instructions. First, he claims that the trial court failed to properly instruct the jury. Second, he claims that his trial counsel was ineffective for failing to object to the jury instructions. (ECF No. 1 at 6-8.) The respondent argues that Watson procedurally defaulted his claims by failing to develop them in the state courts. (ECF No. 20.) Notwithstanding his alleged procedural default, the court considers the merits of Watson's claims. *See* 28 U.S.C. § 2254(b)(2).

A person incarcerated pursuant to a state court judgment who seeks habeas relief in federal court faces a high hurdle. *Turner v. Brannon-Dortch*, 21 F.4th 992, 995 (7th Cir. 2022). A habeas petitioner is entitled to relief only if "the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Turner*, 21 F.4th at 995 (quoting 28 U.S.C. § 2254(d)(1)). "This standard is difficult to meet." *Id.* (quoting *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (per curiam)).

Habeas relief is "not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). Rather, it is reserved for "extreme

2

malfunctions in the state criminal justice systems." *Id.* at 103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). Thus, a petitioner is not entitled to relief merely by showing that the state court's decision was wrong. The petitioner must show that the state court's decision was so wrong as to be unreasonable. *Mays*, 141 S. Ct. at 1149. A decision is unreasonable only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 525-26. The first prong "requires that the petitioner demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* at 525. "What is objectively reasonable is determined by the prevailing professional norms." *Id.* But there is a wide range of permissible conduct, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). The prejudice prong "requires the petitioner to demonstrate a 'reasonable probability that, but for counsel's unprofessional errors,' the outcome would have been different." *Id.* at 526 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009)).

3
Case 2:24-cv-00400-WED    Filed 08/19/24    Page 3 of 8    Document 24

When a claim of ineffective assistance of counsel is presented in a habeas petition, the petitioner faces "a high hurdle." *Hicks*, 871 F.3d at 525. "The Supreme Court has instructed that under these circumstances, [the federal court] must employ a 'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

At the heart of Watson's claims is his assertion that, if he "was acting lawfully in self-defense, his conduct did not create an unreasonable risk to another." (ECF No. 14 at 5.) In other words, he argues that he could not have been acquitted of some charges on the basis of self-defense and also convicted of negligent homicide. He asserts that the trial court erred because it "failed to advise the jury [that] criminal negligence and lawful actions in self defense cannot coexist." (ECF No. 14 at 6.)

Watson's premise is incorrect and inconsistent with Wisconsin law. *See* Wis. Stat. § 939.48(3)[2]. A person privileged to act in self-defense is not permitted to do so negligently. *See* Wis. Stat. § 939.48(3). A person who fires a gun in self-defense may not, for example, do so wildly or aimlessly. A person who did so could be lawfully convicted for negligently injuring a bystander while simultaneously being acquitted on the basis of self-defense for any injury to his attacker. This is distinct from the situation where a

---

[2] "The privilege of self-defense extends not only to the intentional infliction of harm upon a real or apparent wrongdoer, but also to the unintended infliction of harm upon a 3rd person, except that if the unintended infliction of harm amounts to the crime of first-degree or 2nd-degree reckless homicide, homicide by negligent handling of dangerous weapon, explosives or fire, first degree or 2nd-degree reckless injury or injury by negligent handling of dangerous weapon, explosives or fire, the actor is liable for whichever one of those crimes is committed."

shot fired in self-defense innocently goes astray and happens to strike a bystander. Provided the shot was reasonable (*i.e.,* not at least negligent), the right to self-defense will preclude conviction. *See* Wis. Stat. § 939.48(3). It is for the jury to decide whether someone's conduct was a reasonable act that accidentally injured a bystander or whether it was a crime.

Watson reads too much into the commentary on Wisconsin's pattern jury instruction regarding self-defense, WIS JI-CRIM. 801, which states that "criminal negligence and lawful actions in self-defense cannot coexist." The statement (which does not have the force of law) is, at a minimum, incomplete in that it does not account for incidents involving multiple potentially criminal acts. When a person fires multiple shots, a jury may appropriately find that some of those shots were in self-defense and others were criminally negligent. And that is what the jury apparently found here. The jury found, in effect, that the two shots that struck Barnes were privileged acts of self-defense, but the four shots that struck Lattimore were criminally negligent. Self-defense (and criminal liability) is assessed with respect to individual acts (*e.g.,* each shot Watson fired) and not as to an incident overall (*e.g.,* the entire span of events that occurred in the parking lot).

There was no evidence that Lattimore posed any threat to Watson. Therefore, Watson was not entitled to a self-defense instruction regarding Lattimore's death, and the state was not required to negate that affirmative defense beyond a reasonable doubt

5

Case 2:24-cv-00400-WED   Filed 08/19/24   Page 5 of 8   Document 24

to convict him of negligent homicide. Self-defense was an issue only with respect to the shooting of Barnes. Watson's actions defending himself against Barnes were relevant to the death of Lattimore only insofar as Watson acted reasonably in firing the shots that struck Lattimore. *See* Wis. Stat. § 939.48(3). But the jury rejected that argument, finding that Watson was criminally negligent in causing the death of Lattimore.

Because there was no error with respect to the jury instructions or the jury's verdict, Watson was not denied the effective assistance of counsel. Therefore, the court must deny Watson's petition.

Even if the court were to consider the claims that Watson withdrew, the court would find no basis for habeas relief. The relevant statute, Wis. Stat. § 939.48(3), is not unconstitutionally vague. It merely codifies the basic principle that a person who acts in self-defense is not immune for contemporaneous criminal acts. The lawful bounds of a person's conduct under the statute are no more vague than those inherent in any proscription of criminal negligence. The statute did not relieve the government of its burden to disprove the affirmative defense of self-defense because Watson did not have a plausible claim of self-defense as to Lattimore. Self-defense was relevant not as an affirmative defense but only as a factor in determining the reasonableness of Watson's actions. Thus, the state had to (and did) prove beyond a reasonable doubt that, despite the privilege to use self-defense as to the risk posed by Barnes, Watson's conduct created as unreasonable and substantial risk of death as to Lattimore.

Watson's assertion that Wis. Stat. § 939.48(3) is an unconstitutional ex post facto law is without merit. As the Wisconsin Court of Appeals noted, the statute long predated the incident that gave rise to Watson's conviction. *State v. Watson*, 2023 WI App 62, 409 Wis. 2d 766, 998 N.W.2d 851. The statute did not retroactively criminalize any lawful conduct. Watson's argument simply does not fit within the bounds of an ex post facto law claim.

Finally, the trial judge's post-verdict communication with the jury—a routine procedure for many judges—did not implicate a probability of actual bias such that recusal was required. *See Suh v. Pierce*, 630 F.3d 685, 691 (7th Cir. 2011).

Because the court finds that it must deny Watson's petition, it must consider whether to grant him a certificate of appealability. *See* Rule 11, Rules Governing Section 2254 Cases. The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires more than showing merely that an appeal would not be frivolous. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). But this standard does not require that the applicant to show that some judges would grant the petition. *Id*. Rather, when the court has denied the petition on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The

certificate of appealability "shall indicate which specific issue or issues satisfy the showing required by [28 U.S.C. § 2253(c)(2)])."

The court concludes that Watson has failed to make a substantial showing of a denial of constitutional right. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases. Therefore, the court will deny him a certificate of appealability.

**IT IS THEREFORE ORDERED** that Watson's petition for a writ of habeas corpus is denied. The petition and this action are dismissed. The court further denies a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of August, 2024.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge